UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA COSTANZO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>INNSEASON VACATION CLUB, LLC, a Delaware limited liability company, INNSEASON MANAGEMENT, INC., a Massachusetts corporation, and CURRAN MANAGEMENT SERVICES, INC., a Massachusetts corporation, KWC MARKETING, LLC, a New Hampshire limited liability company,<br>*Defendants*. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Patricia Costanzo brings this class action complaint against Defendants InnSeason Vacation Club, LLC, InnSeason Management, Inc., Curran Management Services, Inc., and KWC Marketing, LLC to stop Defendants' practice of making unsolicited phone calls to the cellular telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. Defendants own, operate and/or perform marketing for InnSeason Resorts, a hotel and timeshare resort focused on the northeastern United States. Defendants rely on telemarketing as a primary method of recruiting new timeshare leads.

2. In an effort to promote its timeshares and attract new customers, Defendants,

1

through its own telemarketing efforts as well as through their agents, made thousands of unsolicited phone calls to consumers nationwide informing the call recipients that he or she had, allegedly, won a raffle and was entitled to a free vacation, but that they must pick up the tickets in person. In reality, they had not won, but were being solicited to attend a timeshare sales presentation.

3. Neither Plaintiff Costanzo, nor the other members of the proposed Classes, ever consented to have Defendants make telephone calls to their cellular telephones for the purpose of promoting timeshare offers.

4. By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and the monies paid to their phone carriers for the receipt of such telephone calls.

5. Defendants repeatedly made (or directed to be made on their behalf) unsolicited telephone calls to Plaintiff's and the other putative Class member's telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

6. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

7. Plaintiff Patricia Costanzo is a natural person and citizen of the State of New Hampshire.

8. Defendant InnSeason Vacation Club, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 212 Mid Tech Drive, West Yarmouth, Massachusetts 02673. InnSeason Vacation Club does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

9. Defendant Curran Management Services, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 212 Mid Tech Drive, West Yarmouth, Massachusetts 02673. Curran Management Services does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

10. Defendant InnSeason Management, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 212 Mid Tech Drive, West Yarmouth, Massachusetts 02673. InnSeason Management, Inc. does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

11. Defendant KWC Marketing, LLC is a limited liability company organized and existing under the laws of the State of New Hampshire with its principal place of business located at 17 Olde English Lane, Gilford, New Hampshire 03246. KWC Marketing does business as Northeast Getaways (northeastgetaways.com). KWC Marketing does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

12. Defendants InnSeason Vacation Club, InnSeason Management, and Curran Management Services are closely interrelated companies, who share a principal place of business and numerous executives, and together, along with other non-party entities, comprise InnSeason

Resorts. Likewise, InnSeason Resorts' promotional material lists KWC Marketing and Northeast Getaways as one of its "Other Companies."[1] InnSeason Resorts self-describes itself as "a regional brand of fun-filled, family-oriented vacation resorts that combine the brand expertise of Curran Management Services and its founder, William E. "Billy" Curran, CEO, and the development and operations expertise of Dennis M. Ducharme, RRP, President. With locations stretching from the beaches of Cape Cod and coastal Maine, to the mountains of New Hampshire and Western Maine, InnSeason Resorts is unquestionably one of the Northeast's premier resort development companies." InnSeason Resorts additionally offers several levels of timeshare ownership, including the "InnSeason Vacation Club."

## JURISDICTION AND VENUE

13.  This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

14.  The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transacts significant amounts of business within this District including directing telephone calls here, maintaining their corporate headquarters here, customer solicitation, entering into consumer contracts, and maintaining resorts here.

## COMMON FACTUAL ALLEGATIONS

15.  Defendants jointly form InnSeason Resorts, the owner and operator of numerous hotels and timeshares facilities in Maine, Massachusetts, and New Hampshire.

16.  As a necessary component of Defendants' business model, they must regularly recruit new timeshare customer leads. As Defendants' timeshares are a significant financial

---

[1] http://www.innseason.com/isr/PDF/VCMembersBook_1_2012sm.pdf

4

commitment, Defendants utilize incentives to entice potential owners into their resorts to attend presentations.

17. One such incentivized method utilized by Defendants is to offer raffles at home shows, bridal shows, ski shows, music festivals, fishing shows, sporting events, or a variety of fairs, including, for example, a Renaissance Fair. The raffles often purport to offer that you can win a free vacation, airfare and accommodations included, anywhere in the US. Other raffles allegedly offer thousands of dollars in cash or in free gas. Consumers simply enter the raffle by placing their name, address, and phone number into a jar displayed at the booth. Those operating the booth indicate that there are "no catches" and "no strings attached." Consumers are asked to provide contact information on a blank sheet of paper, specifically for the purpose of being contacted if they win the raffle. They further indicate that a consumer's name won't be added to any marketing list and that he or she will only be contacted if they win.

18. In many instances, the booths, and those operating them, do not identify themselves as being associated with InnSeason Resorts in any way.

19. Shortly after a consumer enters their name in the raffle, usually within one week, he or she receives a telephone call from Defendants, in which the caller is identified as Northeast Getaways. Defendants' telemarketer informs the call recipient that a drawing had recently taken place and that he or she had won the "top prize" or the "biggest prize we've ever offered." The caller further informs them that the prize must be picked up in person at an InnSeason resort, and that a "package" will be waiting at the front desk.

20. However, contrary to the representations made on the call, there was no drawing, and instead, *everyone* called is a "winner." The raffle is nothing more than a scam for surreptitiously collecting phone numbers from unsuspecting consumers. The "drawing" and

"prize" are nothing more than false pretexts to lure consumers to defendant's resorts to promote their timeshare and vacation packages.  Once a consumer arrives, they are required to take part in an aggressive timeshare sales presentation lasting between ninety minutes and three hours. In the end, the "prizes" such as "free" trips or gas, are riddled with hidden requirements, qualifications, additional fees, and restrictions, or, in some cases, are simply non-existent.

21. Defendants regularly inform call recipients that they have won a prize that was not at all part of the raffle they entered. For example, Defendants may state that a person won airfare, when the drawing they entered was for a Home Depot gift card. This further illustrates the point that the raffle and the drawing are not actually real.

22. If a consumer does not answer Defendants' telephone call the first time, Defendants will repeatedly and continually keep calling, including leaving voice messages.

23. If a consumer answers the phone and states that they are not interested in the offer, Defendants' telemarketers will use aggressive and rude upsell techniques to pressure the consumer into agreeing to attend a timeshare presentation. If a consumer successfully gets off the call, Defendants will continue to call and make the same offer and demands.

24. Even in instances where a consumer expressly asks to no longer receive calls from Defendants, and that their contact information be removed from Defendants' database, Defendants *still* continue to make unauthorized telephone calls to consumers.

25. Plaintiff and the putative Class members did not provide Defendants prior written consent to receive calls on their cellular telephones promoting timeshare offers.  To the extent Plaintiff or putative class members provided a telephone number, it was for the sole purpose of receiving notification if they had won the raffle and not consent to receive telemarketing phone calls promoting Defendants' timeshares.  Furthermore, any consent that could have been given

by plaintiff or putative class members was given under false pretenses since plaintiff and class members believed they were submitting their personal contact information as part of a bonafide raffle. Instead, defendants never host a raffle but rather call each consumer informing them they won as part of their scheme to hide the fact that they are telemarketing the consumer. To the extent Plaintiff or putative Class members provided a telephone number to Defendants or Defendants' agents, it was under the pretext of a raffle, and under the understanding that the only reason they would receive a call would be to inform them they had won the raffle. Defendants' telephone calls to Plaintiff and putative Class members were made on the false basis that a drawing had occurred and that only the consumer receiving the telephone call had won.

26. In September 2012, Plaintiff attended a fair in New Hampshire. At the fair, she visited a booth that was promoting a raffle in which the winner could win $5,000. The booth did not contain any signage indicating it was associated with Defendants, nor were there any signs indicating that entering into the raffle would result in receiving telemarketing calls related to timeshares. Plaintiff asked the person at the booth whether her contact information would be used to solicit anything from her, and the person replied that Plaintiff would not receive any calls other than one informing her that she had won. Thereafter, Plaintiff filled out an otherwise blank piece of paper with her contact information and entered it into the raffle.

27. Starting shortly thereafter in September 2012, Plaintiff began receiving numerous phone calls from Defendants, or a business partner acting on Defendants' behalf, on her cellular telephone (and residential landline) from the phone number (603) 458-7637. Defendants' telemarketer informed Plaintiff, falsely, that there had been a drawing and that she had won two free tickets to "anywhere in the world," and that she would have to visit their hotel to pickup the free tickets.  Plaintiff received other calls over the course of several months from (603) 320-4645

and (603) 718-1050.

28.     Plaintiff informed the telemarketer that she had not consented to receive calls from Defendants, that the raffle entry she had filled out did not indicate she would receive telemarketing calls related to timeshares or any other offers, that she was not interested in the "prize" mentioned, and she was not interested in visiting one of Defendants' resorts. Ironically, Plaintiff's boyfriend, who had also submitted his information to the same raffle, also received calls informing him that he too had won the very same raffle.

29.     Plaintiff additionally informed Defendants' telemarketer, on more than one occasion, that she did not want to receive any further calls. However, thereafter, Defendants continued to place unwanted calls to Plaintiff's cellular telephone.

30.     Plaintiff even received a phone call from Defendants on her cellular telephone while traveling abroad, at which point she again informed the telemarketer that she did not want to receive any further calls. In response, the telemarketer stated, "we can call you as much as we want!" Thereafter, Plaintiff received at least six more calls.

31.     In January 2013, Plaintiff placed a call to Defendants to demand they stop calling. Plaintiff received a telemarketing call from Defendants *the very next day*.

32.     The calls Plaintiff received were made using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. Additionally, Defendants' calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendants. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

33. At Defendants' own admission, they use a "state of the art" dialer system manufactured by Noble Systems.

34. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make calls to her telephone for any purpose other than notifying her that she had won a raffle. However, the raffle Plaintiff entered into was not real, and therefore any consent Plaintiff gave was solicited under false pretenses, and therefore, her consent to even receive calls regarding the fact that she had won, was ineffective.

35. Defendants were and are aware that the above described telephone calls were and are being made to consumers without those consumers' prior express consent.

## CLASS ALLEGATIONS

36. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class (the "Class") and subclass (the "SubClass") defined as follows:

> **Class**: All individuals in the United States who (1) received a telephone call on their cellular telephone; (2) made by or on behalf of Defendants; (3) that indicated the call recipient had won a raffle, lottery, sweepstakes, or other drawing.
>
> **Revocation SubClass**: All Class members who expressly requested that Defendants, or any entity acting on Defendants' behalf, stop making calls to their cellular telephones, and following such a request, received one or more telephone calls from or on behalf of Defendants.

37. **Numerosity**: The exact number of Class and SubClass members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made telephone calls to thousands of consumers who fall into the definition of the Class and SubClass. Class members can be identified through Defendants' records.

38. **Typicality**: Plaintiff's claims are typical of the claims of other members of the

9

Class and SubClass, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

39. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and SubClass, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and SubClass, and Defendants have no defenses unique to Plaintiff.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class and SubClass include, but are not necessarily limited to the following:

   (a) whether Defendants' conduct constitutes a violation of the TCPA;

   (b) whether the equipment Defendants used to make the telephone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

   (c) whether Defendants systematically made telephone calls to persons who did not previously provide Defendants with their prior express consent to receive such telephone calls;

   (d) whether Defendants made telephone calls to SubClass members after they requested to no longer receive telephone calls from them;

   (e) whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct.

41. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of

this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class and SubClass will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class and SubClass)

42. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

43. Defendants and/or their agents made unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class and SubClass without their prior express consent to receive such calls.

44. Defendants made the telephone calls, or had them made on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

45. Defendants and their agents utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiff and other members of the Class and SubClass

simultaneously and without human intervention.

46. By making, or having made on their behalf, the unsolicited telephone calls to Plaintiff and the Class's cellular telephones without prior express consent, and by utilizing an automatic telephone dialing system, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

47. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

48. Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patricia Costanzo, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Patricia Costanzo as the representative of the Class, and appointing her counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: March 1, 2013            /s/ David Pastor_____
DAVID PASTOR (BBO # 391000)
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, Third Floor
Boston, Massachusetts 02110
Telephone: (617) 742-9700

RAFEY S. BALABANIAN*
rbalabanian@edelson.com
CHRISTOPHER L. DORE*
cdore@edelson.com
BENJAMIN H. RICHMAN*
brichman@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370

STEFAN COLEMAN*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, PLLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427

*pro hac vice application to be filed