## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA COSTANZO, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 13-cv-10470-NMG |
| *v.* | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| INNSEASON VACATION CLUB, LLC, a Delaware limited liability company, INNSEASON MANAGEMENT, INC., a Massachusetts corporation, and CURRAN MANAGEMENT SERVICES, INC., a Massachusetts corporation, KWC MARKETING, LLC, a New Hampshire limited liability company, | **DEMAND FOR JURY TRIAL** |
| *Defendants*. | |

### FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Patricia Costanzo brings this First Amended Class Action Complaint against Defendants InnSeason Vacation Club, LLC, InnSeason Management, Inc., Curran Management Services, Inc., and KWC Marketing, LLC to stop Defendants' practice of making unsolicited phone calls to consumers' cellular and landline telephones, and to obtain redress for all persons injured by its conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.      Defendants own, operate and/or perform marketing for InnSeason Resorts, a hotel and timeshare resort focused on the northeastern United States. Defendants rely on telemarketing as a primary method of recruiting new timeshare leads.

2.      In an effort to promote InnSeason Resorts' timeshares and attract new customers,

Defendants, through their own telemarketing efforts as well as through their agents, made thousands of unsolicited phone calls to consumers informing the call recipients that they had, allegedly, won a raffle and were entitled to a free vacation, but that they must pick up the prize in person. In reality, the raffle was not real, but rather, just a pretext to collect consumers' personal contact information. Neither Plaintiff nor any other consumer "won" a raffle, as no actual drawing ever occurred. Instead, Defendants use the guise of winning a raffle to induce consumers to attend timeshare sales presentations.

3.      Because Defendants induced Plaintiff and other consumers to provide contact information under false pretenses, neither Plaintiff Costanzo, nor the other members of the proposed Classes, ever provided enforceable consent to have Defendants make telephone calls to their cellular telephones for the purpose of promoting timeshare offers.

4.      By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and the monies paid to their phone carriers for the receipt of such telephone calls.

5.      Defendants repeatedly made (or directed to be made on their behalf) unsolicited telephone calls to Plaintiff's and the other putative Class members' telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

6.      The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

7.      Plaintiff Patricia Costanzo is a natural person and citizen of the State of New Hampshire.

8.      Defendant InnSeason Vacation Club, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 212 Mid Tech Drive, West Yarmouth, Massachusetts 02673. InnSeason Vacation Club does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

9.      Defendant Curran Management Services, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 212 Mid Tech Drive, West Yarmouth, Massachusetts 02673. Curran Management Services does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

10.     Defendant InnSeason Management, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 212 Mid Tech Drive, West Yarmouth, Massachusetts 02673. InnSeason Management, Inc. does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

11.     Defendant KWC Marketing, LLC is a limited liability company organized and existing under the laws of the State of New Hampshire with its principal place of business located at 17 Olde English Lane, Gilford, New Hampshire 03246. KWC Marketing does business as Northeast Getaways (northeastgetaways.com). KWC Marketing does business throughout the United States, the Commonwealth of Massachusetts, and in this District.

12.     Defendants InnSeason Vacation Club, InnSeason Management, and Curran Management Services are closely interrelated companies, who share a principal place of business and numerous executives, and together, along with other non-party entities, comprise InnSeason Resorts. Likewise, InnSeason Resorts' promotional material lists KWC Marketing and Northeast Getaways as one of its "Other Companies."[1] InnSeason Resorts describes itself as "a regional brand of fun-filled, family-oriented vacation resorts that combine the brand expertise of Curran Management Services and its founder, William E. "Billy" Curran, CEO, and the development and operations expertise of Dennis M. Ducharme, RRP, President. With locations stretching from the beaches of Cape Cod and coastal Maine, to the mountains of New Hampshire and Western Maine, InnSeason Resorts is unquestionably one of the Northeast's premier resort development companies." InnSeason Resorts additionally offers several levels of timeshare ownership, including the "InnSeason Vacation Club."

## JURISDICTION AND VENUE

13.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., which is a federal statute.

14.     The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District including directing telephone calls here, maintaining their corporate headquarters here, soliciting customers, entering into consumer contracts, and maintaining resorts here.

## COMMON FACTUAL ALLEGATIONS

15.     Defendants jointly form InnSeason Resorts, the owner and operator of numerous

---

[1] http://www.innseason.com/isr/PDF/VCMembersBook_1_2012sm.pdf

hotels and timeshares facilities in Maine, Massachusetts, and New Hampshire.

16.     As a necessary component of Defendants' business model, Defendants must regularly recruit new timeshare customer leads. As Defendants' timeshares are a significant financial commitment, Defendants utilize incentives to entice potential owners into their resorts to attend presentations.

17.     One such incentivized method utilized by Defendants is to offer raffles at home shows, bridal shows, ski shows, music festivals, fishing shows, sporting events, or a variety of fairs, including, for example, a renaissance fair.  The raffles purport that you can win a free vacation, airfare and accommodations included, anywhere in the US. Other raffles allegedly offer thousands of dollars in cash or in free gas. Those individuals operating the booth indicate that there are "no catches" and "no strings attached." Consumers are asked to provide contact information on a simple form prominently featuring the words "ENTER TO WIN" at the top. Those operating the booths further indicate that a consumer's name won't be added to any marketing list and that he or she will only be contacted if they win.

18.     The booths, and those operating them, do not conspicuously identify themselves (if at all) as being associated with InnSeason Resorts or in any way promoting timeshares.

19.     Shortly after a consumer enters their name in the raffle, usually within a week or less, he or she receives a telephone call from Defendants, in which the caller is identified as "Northeast Getaways." Defendants' telemarketer informs the call recipient that a drawing had recently taken place and that he or she had won the "top prize" or the "biggest prize we've ever offered." The caller further informs them that the prize must be picked up in person at an InnSeason resort, and that a "package" will be waiting at the front desk.

20.     However, contrary to the representations made on the call, there was no drawing,

and everyone who "entered" their name in the drawing is called. As such, *everyone* is a

"winner." On information and belief, the only people who are not "winners" are those who do

not fit the preferred demographic groups (*i.e.*, those that "win" fall into specified income ranges,

age brackets, home ownership status, etc.) If an entry form does not fall into the preferred group,

that person may not "win" and may not receive a call.

21.     The purported raffle, therefore, is nothing more than a pretext for surreptitiously

collecting phone numbers from unsuspecting consumers.  The "drawing" and "prize" are

likewise nothing more than ruses to lure consumers to Defendant's resorts to promote their

timeshare and vacation packages.

22.     If a "winner" attempts to collect their promised "prize," he or she must visit

Defendants' resorts in person. Upon arrival, the "winner" is required to take part in an aggressive

timeshare sales presentation lasting between ninety minutes and three hours. In the end, the

"prizes" such as "free" trips or gas, are riddled with hidden requirements, qualifications,

additional fees, blackout days, minimum stays, and other restrictions, or, in some cases, are

simply non-existent.

23.     In fact, Defendants regularly inform call recipients that they have won a prize that

was not at all part of the raffle they entered. For example, Defendants may state that a person

won free airline tickets, when the drawing they entered was only for a Home Depot gift card,

further illustrating the point that the raffle and the drawing are not actually real.

24.     If a consumer does not answer Defendants' telephone call the first time,

Defendants will repeatedly and continually keep calling and leave voice messages.

25.     Moreover, if a consumer answers the phone and states that he or she is not

interested in the offer, Defendants' telemarketers will use aggressive and rude upsell techniques

to pressure the consumer into agreeing to attend a timeshare presentation. If a consumer

successfully gets off the call, Defendants will continue to call and make the same offer and

demands.

26.     Even in instances where a consumer expressly asks to no longer receive calls

from Defendants, and that their contact information be removed from Defendants' database,

Defendants *still* continue to make unauthorized telephone calls to consumers.

27.     Plaintiff and the putative Class members did not provide Defendants informed

and enforceable prior written consent to receive calls promoting timeshare offers.  To the extent

Plaintiff or putative class members provided a telephone number, it was expressly in exchange

for being entered into a legitimate raffle that would have a single winner and award the stated

prize without qualifications or conditions.

28.     Defendants' own entry forms indicate that "event drawings will be held weekly,

and a monthly drawing will be held on the last day of the month through Dec 31, 2012 at KWC

Marketing LLC…A KWC representative will draw one winner at random weekly & monthly."

The form additionally states that the "odds of winning are determined by the number of eligible

entries received." These representations are simply not true as there is no drawing and there is no

single winner.

29.     As such, any consent that could have been given by Plaintiff or putative Class

members was given under false pretenses, as Plaintiff and Class members believed they were

submitting their personal contact information as part of a bonafide raffle.  Instead, Defendants

never host a raffle but rather call consumers informing them they won as part of their scheme to

hide the fact that they are simply telemarketers. Defendants' telephone calls to Plaintiff and

putative Class members were made on the false basis that a drawing had occurred and that only

7

the consumer receiving the telephone call had won.

## FACTS SPECIFIC TO PLAINTIFF COSTANZO

30.     In September 2012, Plaintiff attended a fair in New Hampshire. At the fair, she visited a booth that was promoting a raffle in which the winner could win a cash prize. The booth did not contain any signage indicating it was associated with Defendants, nor were there any signs indicating that entering into the raffle would result in receiving telemarketing calls related to timeshares. Plaintiff asked the person at the booth whether her contact information would be used to solicit anything from her, and the person replied, as is Defendants' general practice, that Plaintiff would only receive a call if she won the raffle.

31.     Thereafter, Plaintiff filled out an entry form with her contact information and entered it into the raffle. Plaintiff believed that she was entering a legitimate raffle and providing her contact information in exchange for a chance to win a cash prize.

32.     Plaintiff's residential and cellular telephone numbers, which she placed on the entry form for the purpose of being contacted if she won the raffle, have been registered on the National Do Not Call Registry since March 2010.

33.     The day after Plaintiff filled out the entry form, Defendants called Plaintiff's residential landline and left a message on her answering machine indicating that she had won the raffle. Believing she had won a cash prize, Plaintiff returned Defendants' call.

34.     Defendants' telemarketer informed Plaintiff, falsely, that there had been a drawing and that she had won two free tickets to "anywhere in the world," and that she would have to visit their resort to pickup the free tickets.

35.     Of course, the raffle Plaintiff believed she had entered into was not for a free trip, but rather a cash prize. Confused by the call and suspicious as to whether she had actually won

anything, Plaintiff informed the telemarketer that she was not interested in the "prize" mentioned or in visiting one of Defendants' resorts, and that she wished to no longer be called by Defendants. Plaintiff requested that her name and contact information be removed from Defendants' database. Defendants' telemarketer was very pushy and insisted that Plaintiff come to one of Defendants' resorts. Plaintiff again refused and requested that she no longer be called.

36.      In direct contradiction to Plaintiff's explicit request to not be called again, in the days and weeks that followed, Plaintiff received numerous telephone calls from Defendants on her residential landline and her cell phone. As Plaintiff had noted the number from which she had received the first call, she was able to screen Defendants' calls and not answer them.

37.      Ironically, around the same time, Plaintiff's boyfriend, who had also submitted his information to the very same raffle, also received calls informing him that he too had won the very same raffle.

38.      Approximately one month after the initial call, on or around September 30, 2012, Plaintiff received a call from Defendants, or a business partner acting on Defendants' behalf, on her residential landline from the phone number (603) 718-1050. As Plaintiff was out of the country at the time, Plaintiff's answering machine answered and Defendants telemarketer left a message.

39.      Later that same day, Defendants again placed a call to Plaintiff's residential phone line that was answered by her answering machine.

40.      The very next day, at 8:45 in the morning, Defendants again called Plaintiff's residential landline.

41.      Around the same time, while Plaintiff was abroad in Europe, Plaintiff received a telephone call from Defendants on her cellular telephone. In answering the call, Plaintiff again

stated that she wanted to no longer receive phone calls from Defendants, and in response, the telemarketer stated that they could call you as much as they wanted. Plaintiff received additional roaming charges as a result of receiving the unwanted call from Defendants while she was abroad.

42.      Plaintiff received additional calls on her residential landline on October 4th, 2012, which again prompted her to request that Defendants stop calling her and inform Defendants that they had called her cellular telephone without authorization while she was abroad.

43.      In January 2013, Plaintiff again received several telephone calls on her residential landline from Defendants and again requested that Defendants stop calling. Around this same time, Plaintiff placed a call to Defendants to request, again, that she stop receiving calls.

44.      On information and belief, the calls Plaintiff received were made using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. Additionally, Defendants' calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendants. This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

45.      Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make calls to her telephone for any purpose other than notifying her that she had won a raffle. However, the raffle Plaintiff entered into was not real, and therefore any alleged consent Plaintiff gave was solicited under false pretenses. Thus, any purported consent, to receive any calls, is and was ineffective.

46.      Defendants were and are aware that the above described telephone calls were and

10

are being made to consumers without those consumers' prior express consent and that consumers

contact information is being collected under false pretenses.

## CLASS ALLEGATIONS

47.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and 23(b)(3) on behalf of herself and two classes (the "Classes") and two subclasses (the

"SubClasses") defined as follows:

> **Cell Phone Class**: All individuals in the United States who (1) Defendants made
> a telephone call to their cellular telephone; (2) promoting Defendants' products or
> services; (3) without that individuals prior express consent to receive such calls.
>
> > **Revocation SubClass**: All Cell Phone Class members who expressly
> > requested that Defendants, or any entity acting on Defendants' behalf, stop
> > making calls to their cellular telephones, and following such a request,
> > Defendants made one or more telephone calls to their cellular telephones.
>
> **Do Not Call Class:** All individuals in the United States (1) who had his or her
> telephone number(s) registered with the National Do Not Call Registry; (2) to
> which Defendants made more than one telephone call to; (3) promoting
> Defendants' products or services; (4) within any 12-month period.
>
> > **Do Not Call Revocation SubClass**: All Do Not Call Class members who
> > who expressly requested that Defendants, or any entity acting on
> > Defendants' behalf, stop making calls to them, and more than thirty days
> > following such a request, Defendants made one or more telephone calls to
> > them.

48.     **Numerosity**: The exact size of the Classes is unknown and not available to

Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and

belief, Defendants have made telephone calls to thousands of consumers who fall into the

definition of the Classes. Class members can be identified through Defendants' records.

49.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the

Classes, in that Plaintiff and the Class members sustained damages arising out of Defendants'

uniform wrongful conduct and unsolicited telephone calls.

50.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

51.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes and SubClasses include, but are not necessarily limited to the following:

  (a)    whether Defendants' conduct constitutes a violation of the TCPA;

  (b)    whether the equipment Defendants used to make the telephone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

  (c)    whether Defendants systematically made telephone calls to persons who did not previously provide Defendants with their prior express consent to receive such telephone calls;

  (d)    whether Defendants made telephone calls to members of the SubClasses after they requested to no longer receive telephone calls from them;

  (e)    whether Defendants systematically made telephone calls to persons whose telephone numbers were registered with the National Do Not Call Registry;

  (e)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

52.    **Superiority**: This case is also appropriate for class certification because class

proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes and SubClasses will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### COUNT I
**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On behalf of Plaintiff, the Cell Phone Class, and the Revocation SubClass)**

53.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54.     Defendants and/or their agents made unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class and SubClass without their prior express consent to receive such calls.

55.     Plaintiff and members of the Cell Phone Class did not provide Defendants prior express consent by entering into Defendants' supposed raffle because (1) there was no actual raffle; (2) there was no drawing; (3) neither Plaintiff nor any other Cell Phone Class member actually "won" Defendants' raffle; and (4) because Plaintiff and the Cell Phone Class members

were induced under false pretenses to provide their personal contact information to Defendants. As such, Plaintiff and Cell Phone Class members *could not* provide informed consent, and any alleged consent is void and ineffective.

56.     Defendants made the telephone calls, or had them made on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

57.     Defendants and their agents utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiff and other members of the Cell Phone Class and Revocation SubClass simultaneously and without human intervention.

58.     By making, or having made on their behalf, the unsolicited telephone calls to Plaintiff and the Class's cellular telephones without prior express consent, and by utilizing an automatic telephone dialing system, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

59.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Cell Phone Class and Revocation SubClass suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

60.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

**COUNT II**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5)**
**(On behalf of Plaintiff, the Do Not Call List Class, and**
**the Do Not Call Revocation SubClass)**

61.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

14

herein.

62.     47 U.S.C. §227 (c) provides that any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may," bring a private action based on a violation of said regulations, which regulations were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

63.     The Telephone Consumer Protection Act's implementing regulation, 47 C.F.R. §64.1200 (c), provides that "No person or entity shall initiate any telephone solicitation" to "…(2) A residential telephone subscriber who has registered his or her telephone number on the national do- not- call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

64.     47 C.F.R. §64.1200 (d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do not- call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do- not- call request within a reasonable time from

15

the date such request is made. This period may not exceed thirty days from the date of such request.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for *5* years from the time the request is made.

65.     47 C.F.R. §64.1200 (e), provides that §64.1200 (c) and (d) "are applicable to any

person or entity making telephone solicitations or telemarketing calls to wireless telephone

numbers to the extent described in the Commission's Report and Order, CO Docket No. 02-278,

FCC 03- IS3, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of

1991,'" which Report and Order in turn, provides as follows:

The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

66.     Defendants violated § 64.1200(c) by initiating telephone solicitations to wireless

and residential telephone subscribers, such as Plaintiff and the Do Not Call Class, who registered

their respective telephone numbers on the National Do Not Call Registry, a listing of persons

who do not wish to receive telephone solicitations that is maintained by the federal government.

These subscribers requested not to receive calls from Defendants, as set forth in § 64.l200(d)(3).

67.     Defendants and/or their agents made unsolicited telephone calls to members of the Do Not Call List Class and Do Not Call List Revocation SubClass without their prior express consent to receive such calls.

68.     Plaintiff and members of the Do Not Call List Class did not provide Defendants prior express consent by entering into Defendants' supposed raffle because (1) there was no actual raffle; (2) there was no drawing; (3) neither Plaintiff nor any other Do Not Call List Class member actually "won" Defendants' raffle; and (4) because Plaintiff and the Do Not Call List Class members were induced under false pretenses to provide their personal contact information to Defendants. As such, Plaintiff and Do Not Call List members *could not* provide informed consent, and any alleged consent is void and ineffective.

69.     Moreover, Plaintiff and members of the Do Not Call Revocation SubClass requested that Defendants no long place calls to them, after which Defendants failed to place Plaintiff and members of the Do Not Call Revocation SubClass on Defendant's internal do not call list (or failed to do so within a reasonable period of time). Thereafter, Defendants placed additional calls to Plaintiff and members of the Do Not Call Revocation SubClass without their consent and in violation of their request not to be called. Defendants placed calls to Plaintiff and members of the Do Not Call Revocation SubClass more than thirty days after they requested that Defendants no longer call them.

70.     Defendants violated § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

71.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call

Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500.00 in damages for such violations of § 64.1200.

72.    To the extent defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patricia Costanzo, individually and on behalf of the Classes, prays for the following relief:

1.    An order certifying the Classes and SubClasses as defined above, appointing Plaintiff Patricia Costanzo as the representative of the Classes, and appointing her counsel as Class Counsel;

2.    An award of actual and statutory damages;

3.    An injunction requiring Defendants to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class;

4.    An award of reasonable attorneys' fees and costs; and

5.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: April 5, 2013

/s/ David Pastor_____
DAVID PASTOR (BBO # 391000)
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, Third Floor
Boston, Massachusetts 02110
Telephone: (617) 742-9700

RAFEY S. BALABANIAN*
rbalabanian@edelson.com
CHRISTOPHER L. DORE*
cdore@edelson.com
BENJAMIN H. RICHMAN*
brichman@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370

STEFAN COLEMAN*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, PLLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427

*pro hac vice application to be filed

## <u>CERTIFICATE OF SERVICE</u>

      I, David Pastor, an attorney, hereby certify that on April 5, 2013, I served the above and foregoing ***Plaintiff's First Amended Class Action Complaint***, by causing a true and accurate copy of such paper to be filed and served upon all counsel of record via the Court's CM/ECF electronic filing system, on this the 5th day of April 2013.

                                               /s/ David Pastor